# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVEN JEAN-PIERRE,** : | CIVIL ACTION NO. 1:06-CV-2248 |
| **Plaintiff,** : | (Judge Conner) |
| v. : | |
| **BOP , et al.,** : | |
| **Defendants,** : | |

## MEMORANDUM

Plaintiff Steven Jean-Pierre ("plaintiff"), a federal inmate formerly incarcerated at the United States Penitentiary at Canaan ("USP-Canaan"), commenced this <u>Bivens</u>[1] action on April 19, 2006. (Doc. 1.) He is presently proceeding *via* an amended complaint. (Doc. 20.) Therein, he alleges violations of his First and Fourteenth Amendment rights as well as state law claims.[2] Named as defendants are the following individuals: Cameron Lindsay, Warden; Kyle Lindsay, Unit Manager; Alison O'Neil, Case Manager; Tom Gubbiotti, Counselor; Kenneth

---

[1] <u>Bivens</u> actions are the federal counterpart to 42 U.S.C. § 1983 claims brought against state officials. <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004) (citing <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a <u>Bivens</u> claim against federal officials." <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] In his opposition briefs (Docs. 36, 45) plaintiff seeks to add a number of claims including equal protection, right to privacy, failure to protect and cruel and unusual punishment. Because none of these claims are pled in the amended complaint, they will not be considered by the court.

Flores[3], Press Foreman; Harrell Watts, National Inmate Appeals Administrator; D. Scott Dodrill, Regional Director; and Harley G. Lappin, Director.  Presently before the court are two separate motions to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(b).  (Docs. 22, 42.)  For the reasons set forth below, defendants' motions to dismiss will be granted with respect to the due process and conspiracy claims, and the motions for summary judgment will be granted as to the retaliation claims.  The court will decline to exercise supplemental jurisdiction over the state law claims.

I.   **Motions to Dismiss**

   A.   **Allegations of the Complaint**

   Plaintiff alleges that on June 5, 2006, he reported to work at the UNICOR Factory, and as he "walked through the security metal detector the device went off." (Doc. 20, at 4 .)  This prompted a pat search by defendant Flores.  "Defendant [Flores] started to search the plaintiff from his upper body, when the defendant reach [sic] the plaintiff lower body the defendant actually took his time in slow motion and put his hand on the plaintiff [sic] butt and caressed it all the way down." (Id.)  Plaintiff immediately notified defendant Flores "that he just touched the plaintiff in an inappropriate manner which the plaintiff did not approved [sic] and appreciate. . . ."  (Id.)  Plaintiff and defendant Flores exchanged words and plaintiff

---

[3]Plaintiff mistakenly identifies him as "Flowres."

2

requested that a lieutenant be called to resolve the issue. (Id. at 5.) Plaintiff alleges that after approximately fifteen minutes, the lieutenant appeared. "Defendant then talked to the lieutenant without the plaintiff hearing a word that was being said between the two, then the plaintiff was being escorted out of the unicore [sic] factory by the lieutenant." (Id.) He was taken to a holding cell in the lieutenant's office. After the passage of approximately two hours, he was notified that he was being given an incident report for insolence. (Id. at 6.) Plaintiff alleges that "the only reason why the defendant wrote the insolent report was to cover-up his misconduct actions and to try to stop the plaintiff from complaining." (Id.)

The following day, plaintiff appeared before the Unit Disciplinary Committee ("UDC"), which included defendants Gubbiotti, Kyle Lindsay and O'Neil. (Id.) Plaintiff gave his version of the events and argued that the "report was just a form of retaliation by the defendant to stop the plaintiff from complaining about the assault. . . ." (Id. at 6-7.) He requested that the UDC review the video surveillance camera as evidence that he was sexually assaulted by defendant Flores. His request was denied because "the Administration only reviewed video surveillance when inmates commit crimes." (Doc. 20, at 7.) He alleges that defendant Gubbiotti stated that he would "ride with his officer; which means he would believe the defendant Flowres [sic] without reviewing the requested surveillance video. Upon information and belief and based upon defendant Gubbiotti [sic] remarks it is believed that defendant Gubbiotti refused to admit the surveillance tape as evidence to cover up his co-defendant Flowres [sic] action in a deliberate manner." (Id.) The UDC

3

concluded that plaintiff acted in an insolent manner by using profanity while a pat search was being performed. (Id. at 7.) He was sanctioned with loss of job for 180 days. He takes the position that "all the defendants acted with delibrate [sic] malice to cover up defendant Flowres [sic] action by refusing to allowed [sic] the Unicor Factory surveillance tape as evidence on the plaintiff [sic] behalf. . . ."

Plaintiff unsuccessfully appealed the decision through all levels of review. He challenged the UDC's denial of his request to review the video surveillance tape and was informed, at each level of review, that the surveillance equipment was not available to him because it is utilized for institution security purposes only. (Id. at 12.) It is his contention that defendants Cameron Lindsay, Dodrill, Watts, and Lappin entered into an agreement with BOP staff to uphold the unlawful UDC proceedings. (Id.)

Plaintiff alleges that the denial of access to the videotape during the disciplinary proceedings and the sanction of loss of his job for 180 days deprived him of his due process rights and amounted to a conspiracy to retaliate against him for exercising his First Amendment rights and an agreement to cover-up defendant Flore's sexual battery, assault and harassment.

    **B.**    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting Twombly, ___ U.S. at ___, 127 S. Ct. at 1969). Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**C.     Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Bivens actions are the federal counterpart to § 1983 claims.  Egervary, 366 F.3d at 246 (citing Brown, 250 F.3d at 800).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials." Schrob, 948 F.2d at 1409.

     1.     Due Process

Plaintiff alleges that the denial of access to the videotape during the disciplinary proceedings deprived him of his due process rights.  His contention

requires a determination of whether he had a protected liberty interest and, if so, what process was mandated to protect it.  See Sandin v. Conner, 515 U.S. 472, 484 (1995); Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).  Importantly, due process requirements apply only when the prison's actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483.  "[T]he baseline for determining what is "atypical and significant"-the "ordinary incidents of prison life"-is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706  (3d Cir. 1997)(quoting Sandin, 515 U.S. at 486).

 An inmate does not have a protected liberty or property interest in continued prison employment.  James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975).  "[A]n inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest. Wilkins v. Bittenbender, 2006 WL 860140 *9 (M.D.Pa. March 31, 2006)(Conaboy, J.)(quoting Bulger v. U. S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995)).  See also Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding inmates have no property interest in continuing in work-release program); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (finding Constitution does not create a property interest in prison employment).  The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right.  Id.  Consequently, the disciplinary sanction at issue, loss of prison employment for a period of 180 days,

does not constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. Therefore, he is not entitled to any due process protections. Defendants' motions to dismiss this claim will be granted.

    2.    Conspiracy

Plaintiff also alleges that the denial of access to the videotape amounted to a conspiracy to retaliate against him for exercising his First Amendment rights and an agreement to cover-up defendant Flore's unlawful conduct. In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area VocationalTechnical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Rose, 871 F.2d at 366.

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. Id.; Rose, 871 F.2d at 366; Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991); Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).

Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young, 926 F.2d at 1405 n. 16.

Viewing the complaint in the light most favorable to plaintiff, he has nevertheless failed to state a viable conspiracy claim against defendants. He alleges in conclusory fashion that the denial of access to the videotape amounted to a conspiracy to retaliate against him for exercising his First Amendment rights and an agreement to cover-up defendant Flores' unlawful conduct. The complaint is devoid of specific facts which tend to show a meeting of the minds and some concerted activity. Plaintiff relies on subjective suspicions and unsupported speculation. This is insufficient to state a conspiracy claim. The conspiracy claims lodged against all defendants are subject to dismissal.

## II.     **Motions for Summary Judgment**

### A.     **Statement of Facts**

On June 5, 2006, defendant Flores conducted a pat search on plaintiff, a UNICOR factory worker. "Part of [his] job is to conduct pat searches on inmates working in the factory." (Doc. 25-2, Declaration of Kenneth Flores, at 3, ¶ 3.) Defendant Flores describes the search as follows:

> I conducted a pat search on inmate Jean-Pierre in the same manner in which I search all inmates. Because it is common for inmates to attempt to conceal weapons or other contraband in

> their waistbands, groin and buttocks area, it is important that these areas, among others, be thoroughly searched. I did not "sexually assault" inmate Jean-Pierre. It is accurate that I would have put my hands on the plaintiff's buttocks. That is the only way to determine if there is contraband concealed in an inmate's pants or buttock area without progressing to conducting a strip search. During the course of the pat search, inmate Jean-Pierre became insolent and yelled "Don't touch my ass." I told the inmate to remove the contents of his pockets and began the pat search again. The inmate again yelled, "Don't touch my ass." This type of insolent outburst cannot be tolerated in a prison environment when staff are attempting to perform pat searches in an effort to detect weapons or other contraband.
>
> I wrote an incident report on inmate Jean-Pierre for "Insolence" (Code 312). The description of the incident which was included in the report is an accurate account.

(Id., at 3-4, ¶¶ 4-6.) "The prohibited act is committed when an inmate is contemptuously rude in behavior or speech toward a staff member." (Doc. 1, at 28.)

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates, or attempts to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.

The UDC heard plaintiff's case on June 6, 2006. At the hearing, plaintiff commented that he simply stated "Officer you just frisked me in an inappropriate manner." (Doc. 25-2, at 6.) Plaintiff was found guilty of insolence "[b]ased on the

fact staff observed inmate Jean-Pierre acting in an insolent manner by using profanity while a pat search was being performed." (Id.) He was sanctioned to 180 days of loss of job. (Id.)

He filed an appeal on that same date. (Doc. 1, at 21.) His appeal was denied on June 16, 2006, for the following reasons:

> On June 6, 2006, a Unit Disciplinary Committee (UDC) hearing was conducted by members of your unit team. During this hearing when asked if you had any comments regarding the Incident Report, you indicated you told the officer that he had just frisked you in an inappropriate manner. The UDC gave greater weight to the Reporting Officer's statement and found that you did commit the prohibited act of Insolence Towards a Staff Member and appropriately sanctioned you to 180 days loss of UNICOR employment, because this incident occurred in the UNICOR factory.

(Doc. 1, at 25.) He filed a timely appeal to the next level of review. (Id. at 26.) He was unsuccessful at the Regional Level in that it was concluded that "the UDC considered the evidence presented and reasonably determined there was sufficient evidence your actions during the pat search were insolent. Even if you felt an improper search was being conducted, you do not have the right to be insolent toward staff and there are grievance procedures available for raising the issue." (Id. at 28.) Likewise, his appeal to the National Inmate Appeals Board was unsuccessful. (Id. at 20.)

### B. Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F.

Supp. 2d 311, 314 (M.D. Pa. 2004).  Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim.  FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004).  "Such affirmative evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989).  Only if this burden is met can the cause of action proceed.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P.  56(c), (e).

**C.     Discussion**

The First Amendment offers protection for a wide variety of expressive activities.  See U.S. CONST. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).

In Rauser v. Horn, the Third Circuit defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim.  See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001).  The court established a three prong test.  First, the prisoner must prove that the conduct which led to the

alleged retaliation was constitutionally protected.  See id. at 333 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999).  Next, the prisoner must show that he has suffered some adverse action at the hands of prison officials.  See Rauser, 241 F.3d at 333 (citing Allah v. Sieverling, 229 F.3d 220, 225 (3d Cir. 2000)).  A prisoner can satisfy this prong by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  See id.  The last Rauser prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him.  The court employs a burden-shifting regime to determine whether a causal link exists.  The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him.  See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity.  See id.  If the defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action.  See id. at 334.

It is alleged that defendant Flores wrote the incident report "because the plaintiff had tried to exercise his first amendment right by protesting against the way the defendant had touched him in such a perverted manner; and the only reason why the defendant wrote the insolent report was to cover-up his misconduct

actions and to try and stop the plaintiff from complaining." (Doc. 20, at 6.) Even assuming that plaintiff has met the first two prongs of the Rauser test, his claim must fail because defendant Flores would have taken the same steps regardless of plaintiff's threats to report what he considered to be inappropriate conduct. As stated by defendant Flores, the "type of insolent outburst [displayed by plaintiff] cannot be tolerated in a prison environment when staff are attempting to perform pat searches in an effort to detect weapons or other contraband." (Doc. 43-2, at 3-4, ¶ 5.) There is no question that there is a legitimate penological interest in curtailing unacceptable behavior while engaging in the sensitive, but clearly necessary, duty of conducting a pat search on prisoners. As such, the court will grant summary judgment on this retaliation claim.

Plaintiff alleges that defendants, Cameron Lindsay, Kyle Lindsay, O'Neil, Gubbiotti, Watts, Dodrill and Lappin retaliated against him in the course of the disciplinary proceedings and appeal process. Again, even assuming that plaintiff has met the first two prongs of the Rauser test, his claim fails against these defendants because they would have taken the same steps during the UDC hearing and appeal process. Members of the UDC Committee were presented with an incident report charging plaintiff with insolence. As noted in the Statement of Facts, Section II. A, supra, "[t]he prohibited act is committed when an inmate is contemptuously rude in behavior or speech toward a staff member." (Doc. 1, at 28.) The plaintiff conceded that he vehemently objected to the pat search. In addition, the committee relied "on the fact staff observed inmate Jean-Pierre acting in an

14

insolent manner by using profanity while a pat search was being performed." (Doc. 25-2, at 6.) Also, it was noted during the appellate process that "[e]ven if you felt an improper search was being conducted, you do not have the right to be insolent toward staff and there are grievance procedures available for raising this issue." (Doc. 1, at 28.) Because these defendants would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will be granted summary judgment.

### III. State Law Claims

Finally, plaintiff states that "[s]upplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 for this court to simultaneously adjudicate Jean-Pierre's State Tort Law, State Constitution, and State Civil Rights claims herein." (Doc. 20, at 2.) A federal district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The court, having dismissed all of plaintiff's federal claims, will decline to exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(3).

**IV.    Conclusion**

Defendants' motions to dismiss will be granted with respect to the conspiracy and due process claims, and the motions for summary judgment will be granted as to the retaliation claims. (Docs. 22, 42). The court will decline to exercise supplemental jurisdiction over the state claims.


                                            S/ Christopher C. Conner
                                            CHRISTOPHER C. CONNER
                                            United States District Judge


Dated:      March 19, 2008

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN JEAN-PIERRE**, | : | **CIVIL ACTION NO. 1:06-CV-2248** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **BOP , et al.**, | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this day of 19th day of March, 2008, upon consideration of defendants' motions to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) (Docs. 22, 42), and in accordance with the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motions to dismiss (Docs. 22, 42) pursuant to Federal Rule of Civil Procedure 12(b), are GRANTED with respect to the due process and conspiracy claims.

2. Defendants' motions for summary judgment (Docs. 22, 42) pursuant to Federal Rule of Civil Procedure 56(b) are GRANTED with regard to the retaliation claims.

3. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff on the retaliation claims.

4. The court, having dismissed all of plaintiff's federal claims, DECLINES to exercise supplemental jurisdiction over plaintiff's state-law claims. 28 U.S.C. § 1367(c)(3).

5. The Clerk of Court is further directed to CLOSE this case.

6.   Any appeal from this order is DEEMED frivolous and not in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3).


<u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge